Good morning, Your Honor. Barry Marks speaking on behalf of Shango Greer. Ms. Lando appears on behalf of Mr. Walker. The way we've divided it up is Ms. Lando will do the rebuttal argument. I'd ask to reserve five minutes for rebuttal with one caveat. I'm going to be discussing the issues revolving around the testimony of Detective Fowler, specifically the constitutional issue. If the Court has any questions about any of the other issues raised having nothing to do with Detective Fowler, please let me know, because if you ask me anything about it, you'll get a deer-in-the-headlights look, and I'll save some more time for Ms. Lando on that. As I indicated, the issue I'm going to be focusing on are the issues related to the testimony of Detective Fowler. This is a hydra-headed situation where the testimony of Detective Fowler has multiple violations of both statutory law and constitutional law. Number one, the testimony of Detective Fowler violated Crawford in the right to confrontation under the Sixth Amendment of the Constitution because he testified as the hearsay. Worse, the Court instructed the jury that they are to treat his testimony as the same way they treat any other testimony. Secondly, the hearsay he relied upon was incredibly unreliable. It did not meet the Daubert standards for the use by an expert. They were unreliable sources, they were undocumented by Detective Fowler, and they were anonymous. Third, Federal Rule of Evidence 703 was violated because, number one, the rule establishes a presumption against admissibility of the underlying facts. Let me just start with Daubert, if I may. All right. Are you saying that he was not properly qualified as an expert under Daubert? What I'm saying is that the information that he presented, Daubert says that the information has to be reliable, that the expert. I'm asking a different question. I understand that. That's what I'm kind of distinguishing. I'm not, you know, an expert is supposed to be someone who's of aid to the jury, explains things that the jury wouldn't understand without expert testimony. So. Let me make sure you understand my question. Are you arguing that he was improperly qualified as an expert under Daubert? Him personally, no, because the standards are very liberal in terms of what constitutes an expert. What I am arguing is the other part of Daubert, namely the information that he was going to testify to did not qualify as the proper basis for expert testimony. Proper. Okay. So he's testifying outside the area of his expertise? Is that what you're saying? That's correct. Proper basis? That's correct, because what I'm saying is that he's testifying as to facts which are perfectly understandable by any juror without the intervention of an expert to explain them. If that's true, then what about the issue, which sounds, the defense is always important anyway. Is this really a gang? Or is it just a group of folks who kind of have fun together and do various things at various times? So it sounds like there was an issue being presented, questioning whether this was actually a gang. And it seems to me that although one can have a general muzzy, fuzzy notion of that, an expert to tell me exactly what is a gang and how do gangs operate would be really helpful. Well, I'm not arguing that. I'm not arguing that an expert can't. It sounds like you are, because you've spent a lot of time, at least in the briefing, talking about, well, how can you go around talking to a bunch of prostitutes and miscreants and evil people and all this stuff and get your expertise that way? Well, no, those are two different things. What I'm saying is, one, an expert can testify much the way a sociologist would testify is that I've studied gangs, and generally speaking, they're organized in such and such a pattern. These are various symbols that I've seen in gangs and so on and so forth. That's fine. But what I'm saying is the Pitch Dark family, the gang in this case, what the expert or Detective Fowler is testifying about are things that the jury could understand without an expert. For example, there were the admissions of the co-defendants. Now, clearly, this is not – the government does not dispute that this is testimonial and that it's hearsay and it should not be admitted for the truth of the matter asserted. The jury can understand without an expert's intervention were it admissible that these six people said we admit that we were in a gang called PDF. You don't need an expert to know that. No, but you might need an expert to tell you that when – one way we figure out whether something's a gang is that we wander around on the streets or we wander through plea deals or we wander about the world and talk to Joe's scumbag on the street and say, Joe, are you a member of PDF? Yep, I am. And Joe is, do you guys consider yourself a gang? Yeah, we're a gang. Well, let me – Isn't that the way an expert guesses information? Well, Judge, I'm not – Like a tire expert. I mean, he examines the tire, right? Well, you know, I can look at a tire and there are – tire experts will tell me things that I can't observe. That's true. But when I see tread, I know to replace the tire. Now, I suspect if you were – You know so because some expert has told you when the tread gets low, you ought to replace the tire. No. When you have a tire and you can see things that you're not supposed to see because you've had tires before, you don't need an expert for that. But what I'm suggesting, Judge, if you were on the jury, you wouldn't need an expert to tell you that one of the things you can consider as to whether or not people are in a gang is if they say, we're in a gang. That's something that a juror can understand immediately. It's irrelevant that an expert would consider that because clearly what was done with Detective Fowler's testimony, it was used as a vehicle to bring hearsay evidence before the jury under the guise of expert testimony. And assume for a moment that he's an expert, as you're willing to concede, and assume that the basis for his conclusions that this was a gang might have included this, but that the government is introducing hearsay evidence that it would not otherwise be able to introduce. I'll assume for the purpose of the question that that's an error. Okay. Tell me why it's not harmless. For several reasons. First of all, as I described in my brief, this is no ordinary collection of witnesses. I'm sure you've seen hundreds of cases. I've tried dozens of cases where you have witnesses on the street who are somewhat less than reliable. This was a collection of the most unreliable of the unreliable. You had people saying preposterous things that once you hear it, you just can't believe them. So number one, we're dealing with the fact that the government's case was shaky to begin with in terms of the nature of the witnesses they were calling. Secondly, I'm focusing in on the question of whether or not PDF was a gang. Secondly, yes, the government did ask some of these convicted felons and liars, is the PDF a gang, and they said yes. Well, a gang is a generic term. I mean, when I used to call my mom and say, what you doing, she said, I have the gang over. I assume that didn't mean a whole bunch of drug dealers and thugs from my mom's apartment, but that was my Aunt Shirley and her friends. You know your mom better than I do. So what happened is his testimony was positioned at the end of the trial to draw it all together under the aegis of expert opinion. For example, the admissions of the co-defendants. All those co-defendants' names came up repeatedly during the trial in committing crimes. You know, Eric J., Armando, there's a whole bunch of them that repeatedly come out through the testimony of the other witnesses to the crimes. And then you have the expert bringing in what wouldn't have come in had the expert not testified, namely the fact that Armando, Eric Jones, Armando Villafan, Elliot Colmar, Tarver, and Lewis Walker all said they were part of the PDF engaged in gang-related activities. That would never have come in. So here you have the expert, in effect, corroborating or putting the imprimatur of expertise on the testimony of people you wouldn't rely upon for the time of day. Is there any other hearsay evidence that came in through Detective Fowler that specifically implicated these defendants in the killings or just with the perspective of whether they were in the PDF gang? Well, what Detective Fowler said is that the defendants were the leaders of the gang. And he got this from various street sources, street intelligence, as well as, you know, inferentially, the admissions by the co-defendants, well, originally the co-defendants. So was there specific testimony that a source on the street said that Mr. Walker or Mr. Greer did something in particular? No. That was not the – what did come up was that he got all this information from various people that led to his conclusion that they were the leaders of the gang. But hadn't the jury heard evidence from all of these witnesses that you characterized as so unreliable in regard to specific criminal acts that were attributed to the defendants, murders and narcotics dealing and all the other things that the government accused the gang of being involved in? Yes, that's true. And the jury heard testimony from – were there 100 witnesses or more called by the government in this trial? Well, there were about a dozen that focused in on the alleged predicate acts. Okay. So the jury had heard all that, and then the government calls a summary witness at the end to say, based on all this evidence that you've heard and based on my experience of working the streets here for however many years Detective Fowler was a beat officer, it is my opinion that these acts were gang-related. And to get back to Judge Fletcher's question, where's the prejudicial harm that warrants reversal of – what was this, an 82-day trial? Well, if there's an error, it shouldn't matter how long the trial was. No, it's got to be prejudicial. No, of course. And I have to look at it in the context of the testimony of 100 witnesses and hundreds of exhibits that were introduced. This case can't have turned solely on the testimony of Detective Fowler. If I could distinguish between two things, there's testimony of specific predicate acts, but if that's all you have, you don't have a RICO conviction. No, it's got to be part and parcel of a pattern of record. Exactly. And Detective Fowler did not testify based upon the other testimony in the case because he wasn't present for it. It's not like you have an investigating officer sitting in on a trial. But he was part of the task force that investigated the PDF. But he was not present for the – what you posed at the beginning was assuming that he was summarizing based on the testimony of trial. Are you suggesting that he was unaware as a task force officer of all of this evidence? Well, in fact, he testified that he was not focusing in on the PDF in his work as an officer. He said that there were other divisions. That's not my question. I mean, an expert is entitled to rely on all kinds of sources of information in formulating his opinion. And as I understand it, what you're objecting to in particular is the reliance on his experience as a beat officer in his early days in patrol dealing with the denizens of the night of Vallejo. Obviously, the court is right by brief. I've read it word for word, counsel. Okay. But the fact of the matter is what he did, the information he got from the street people was not the testimony in court. That's not what he got. But wasn't his – I thought his testimony was similar to what we typically see where we call or see an expert who testifies in a drug trafficking organization, that here is how a criminal street gang works. And in this case, the criminal street gang had as its object controlling a section of Vallejo and all the narcotics trafficking that went on there. And in furtherance of that effort, they, you know, whacked people who they thought were violating their territory or disrespecting the gang or whatever it is that gets you killed these days. In the eyes of street gangs. Isn't that what he was testifying to? Well, two things. First of all, yes, he was testifying as to a street gang. And he was a fact witness dressed up as an expert witness. He was basically testifying as to simple observations that no expert need testify about. But most importantly, the jury was never instructed that they could not consider his testimony, his street intelligence, and most importantly, the admissions as evidence of guilt. They were told to treat it like any other testimony. You know, your time is down to six minutes. I don't know if you said other counsel was going to say anything or not. Say again? You're down to six minutes of your total time. I don't know if you said other counsel wanted to say something or not. Oh, of course. I'm reserving five minutes, so I have one more minute left. Well, then you've left her 43 seconds or she's just not going to speak. I just want to say that he has a gun. Oh, no, I'm sorry. Go ahead. I meant that you were asking me questions about issues outside of this particular issue. Okay. Because I don't know anything about that stuff. In any event, most importantly, what's at issue here is that you had mountains of hearsay come in as evidence that the jury was told to consider like any other evidence in the case. Because it violated the Sixth Amendment, the test of prejudice of the jury. I'm not quite sure about the jury. I read the instruction, but the question to my mind was, was that instruction enough to have the jury separate out the different kinds of evidence? Why don't we hear from the government and then we'll give a chance to Ms. Landau to respond. I don't know whether the proper argument is going to be rebuttal, but you'll have your five minutes. Okay. Your Honor, can I ask a court question about procedure, though, first? If she says something to which you absolutely need to respond, you can stand up and say it. That's my question. Okay. Thank you very much. How did I know that was what your question was going to be? Okay. Your Honors, good morning. My name is Steve Lapham. I was the lead counsel on the — in this case for the trial. It looks like I'll be spending most of my time on Mr. Fowler, so let me just try and put that testimony in perspective. He calls him doctor and you call him mister. He's a detective? He's a detective. Okay. Let me try and put his testimony in perspective. As was pointed out earlier, this was a very lengthy trial. Mr. Fowler testified in February for a trial that started in November. I think his testimony starts at about page 7700 of the transcript. Most of his testimony did not concern Pitchdark family in particular. As Judge Tallman pointed out, it concerned gangs in general. It concerned the colors they wear, the signs they throw, the fact that gang members don't necessarily share the profits. They share the protection. These are things that are definitely beyond the kin of most jurors. One of his questions that was posed to him was specifically about the admissions that the codependents made. Otherwise, his testimony about PDF does not loom large. It only looms large because the defense has chosen to focus on that very specific question. That question was limited very severely. As you know, we had hearings before the trial to flesh this all out. And the judge insisted that we prepare a written question, which was a leading question so that the witness wouldn't inadvertently stray beyond the field. And it was simply to sanitize the question so that it didn't come out that the codependents pled guilty. It simply came out that they had admitted their enrollment with PDF. So the judge was very concerned about any potential spillover or prejudicial effect, and he took steps to take that into consideration. Now, I want to address Mr. Morris's argument that this is not something that the jury needed to be told about. How hard is it to figure out that, you know, the import of an admission by a defendant? Well, I think that parses Detective Fowler's testimony too finely. He was not there as an expert to interpret guilty pleas or admissions of defendants. He was there for the much larger purpose of testifying about the case. Why did you need to introduce through Detective Fowler any statements by the defendants? Your Honor, arguably, we didn't need to do that. We had already had... Then why did you? Because that's producing the question on appeal. Well, and maybe if I had it to do over again, I would take a different course. Or maybe you really wanted it in there because it was going to hurt them. I mean, I'm trying to figure this out. Because you had to know that this was going to be a problem. Well, we had up to that point in time, we had quite a few witnesses testifying that PDF was a gang. We had quite a few individuals right out of the chute, the first eight witnesses, I think, in the trial, testified about the membership of PDF and identified a lot of these individuals. It was still a hotly contested issue. And it is an element of the offense that we're required to prove. So, you know, when you're a trial attorney and you're obsessing about how much information the jury needs to convict, these are the kind of decisions that were made. But it was... But then if we think that it's error to have that come in, that hurts your argument on prejudice. Well, I don't think it was error to have it come in because... Okay. So why wasn't it error? Well, because an expert is allowed to testify as to all the bases upon which he relied for his opinion. It would unjustifiably hamstring his opinion by saying he couldn't refer to the fact that he knew that several gang members had admitted their gang membership. I mean, how can... Including the defendants? I guess those are okay because it's defendants. It's admissions against interest by the defendants themselves. Okay. But it's those against the other gang members. That's the hearsay that they're objecting to. And that's a good point. Mr. Fowler, Detective Fowler, did not testify that Walker and Greer had admitted to him their gang membership. All he talked about was that there are other people that are part of this gang. So when you're talking about prejudice to the defendant, that evidence went to proving that there was a gang. It didn't go to prove that Mr. Walker and Mr. Greer were part of that gang. One thing I'm having trouble with is that the defense keeps saying that the court said you can consider the evidence, all this stuff, any way you want, just like other evidence. I thought that the court expressly told the jury the expert can testify as to his reasons for his opinion. His opinion, I take it, is PDF is a gang. And he can testify as to his reasons, but the reasons given can't be considered as substantive evidence. He did give that instruction. And... Why do we keep hearing that the court didn't instruct the jury? Well, because the — I think the defense told you about one instruction that the judge gave, closing instruction of the jury. It didn't tell you about the other instruction. And the instruction that the defense focuses on is the standard Ninth Circuit pattern instruction about experts' testimony should be considered just like anybody else's testimony. But there's also a Ninth Circuit instruction that I'm almost positive the court gave, but unfortunately I'm not prepared to tell you for a fact or where it is. But it's the pattern instruction that talks about if I've instructed you during the course of the trial to limit — that certain testimony is limited for a certain purpose, you should consider the evidence for that purpose and no other. So I believe taking those two instructions together, the jury was properly instructed. Now, on that subject, I understand that the defense raises the argument now that the limiting instruction was inadequate. Your Honors, I have to tell you, the trial judge in this case was meticulous on this point, and he practically begged counsel from both sides to submit proper limiting instructions. If appellate counsel now thinks that defense trial counsel could have drafted a better limiting instruction — you know, in fact, I sympathize with their argument there. We use legalese all the time and forget that the general public really doesn't understand words like substantive. But the proper time to correct that problem would have been in drafting that limiting instruction, which the judge was — Well, I mean, I'll help you out on this, since I've got the limiting instruction here in front of me. The judge says the reasons given for the opinion, that is to say the expert opinion, cannot be considered as substantive evidence of the guilt or innocence of the defendants. This applies to all experts who testify in this case. So the question is not whether the instruction is right. I think the instruction is absolutely right. My question is, once you've introduced evidence that will stick in the minds of the defendants, does that instruction cure the problem? I think the instruction is perfectly proper. I think it's a clear statement of what the law is. Well, you're really asking, can you unring the bell? Yeah, that's right. And, I mean, that's a question that I don't think anybody here can really answer. All we can do is do our best. Well, hasn't the Supreme Court told us repeatedly that we presume that the jury follows the instruction that the court gives? Whether it's humanly possible to do so doesn't seem to be the legal task. Well, that's exactly right. That's kind of what I was getting at. I think who will ever know what the inside workings of a jury are? We tell them that this is the law they need to apply, whether they apply it or not. It's kind of like making sausage. I'm not sure I want to know. But I think, overall, to go back to the harmless error argument, I think the defense has a real problem here because they haven't raised any argument about the sufficiency of the evidence. They appear to concede the fact that the government not only proved the four murders that we set out to prove, but that we proved that this was an enterprise, that the defendants were members of that enterprise. And I think when you consider Detective Fowler's testimony in that context, it is, at best, I mean, it's harmless beyond a reasonable doubt, even if it is error, and I don't concede that it is. Mr. Morris didn't talk about the other issues he raised in his brief. If the court has any further questions on the Fowler testimony, I'd be happy to address those. Otherwise, I feel a little bit of an obligation to go on to the other issues. The three other issues that were raised, one was the testimony about Mr. McCloud and whether or not, as I see it, what it boils down to is on that first conversation where Mr. McCloud is describing the Roberts murder, whether or not Jason Walker was within hearing distance. And I just want to ñ I mentioned this in a footnote in the brief, but I want to make sure that it doesn't go unnoticed because the defense repeated this assertion in their reply brief. They continued to have this assertion that the distance in that first conversation was 20 feet. And there's nowhere in the record that that ñ where 20 feet appears. What appears in the record is McCloud is walking down the street. He says that Walker is some distance in front of him. We asked the question, how much, and he said, you know, distance between me and you. That's from the podium to the witness stand. What I take that to mean is whatever the distance was, it was within hearing distance. He was trying to convey that Mr. Walker had no difficulty hearing what he was saying. Was Mr. Walker walking forward or backward? Well, the implication is they were all walking down the street in the same direction. So if you're back is to me, and maybe I'm a little further away from the average podium to the average witness stand, and I'm talking to Judge Fernandez in a tone and volume necessary for me to converse normally with Judge Fernandez, I mean, I don't think you're going to hear much of my conversation. It's a fair point. I agree. It's a fair point, Your Honor. But the question is, it's a foundational issue, whether this testimony can come in as an adoptive admission. And the question is, did Walker hear it? Well, that's, I think, a question that- And if it's an adoption, you're saying it's an adoption because if it was wrong, you would expect him not only to hear it but then turn around and say, that's not right. Right. That's a stretch. Well, we have the two other conversations that- I think you're better off without that conversation as the core of your argument. Well, I think those two other conversations reinforce- And who was present and hearing it in the second conversation? Oh, boy, you're going to test my- I think you've got a problem there, too. Not Greer, apparently. No. In the second conversation, apparently not Greer. That's correct. That's correct. But certainly in the third conversation. Third conversation might be golden, but Greer is not there at the second one, for sure. Right. Right? So we can't admit it against him, certainly. Right. And I would agree with that. And as I stand here right now, I'm not sure if the judge gave a limiting instruction or if one was requested on that with respect to Mr. Greer. It wouldn't be a limiting instruction, would it, if the foundation is sufficient because the jury could see what the distance was between the podium and the witness stand, that presumably is enough of a foundation for the jury to then reach the ultimate question of whether or not Walker heard, and if he did, whether or not he reacted to it. That's right. But I think originally I think the foundational issue is for the judge to determine if there's a foundation for applying the adoptive admission exception. And then presumably the parties would argue in closing, my client couldn't have heard it because he was too far away, therefore it can't be an adoptive admission. Exactly. And if the jury convicts, then obviously they believed he was close enough to hear it and didn't respond. Exactly. Because it was true. I think that brings me to the 404B arguments. There are quite a number of them. I'm not sure I need to address every single one of them unless the court has questions about specific ones. Well, I guess the only one that really bothered me was I don't understand what the relevancy is, let alone the probative value of the possession of a small amount of heroin. The value of that, it was I think twofold. The testimony from previous witnesses was that Pitchfork family got violent. They were especially violent during those periods of time when they were doing heroin. And specifically one witness talked about Jason Walker using liquid heroin in a small dropper bottle. So the testimony about that was corroborative of that one witness to demonstrate that he did have personal knowledge of Jason Walker, enough to know that he used the small vial, and also to explain a lot of the conduct that we had to explain at trial, Pitchfork family's violent behavior, especially in the summer of 1994. And just generally, the 404B evidence was designed to show that these are people who hang out together. They, you know, protect their turf. They have territorial issues, things of that nature. So it all went to the enterprise aspect as well. The final issue is the vouching issue, and I don't need to tell the court. We didn't fire the first shot here. Detective French, Special Agent French's integrity was seriously called into question by one of the witnesses, and the government, I think, is, in that circumstance, is required and allowed to respond. It must respond fairly, of course, but I think we did so in this case. This is not a situation where we gratuitously vouched for a witness and said he wouldn't lie because if he lied, he'd lose his job, you know, without any assertion of wrongdoing being made. This was a case where Special Agent French was seriously, his integrity was seriously called into question, and he was not a critical witness at the trial. As I pointed out in the brief, he testified three times, but his testimony on the first couple of occasions consumed, I think, three to ten pages or less. Wasn't he your case agent? He was the case agent, but it was not necessary for him to testify except on fairly minor evidentiary points, and to understand that, Judge, this case was a historical investigation. The case was opened in 2001, long after all of these murders had occurred, and it goes back to 1994. Special Agent French, I think, wasn't even an agent for a lot of the history of this case, so he came in for limited purposes to talk about, I think, photographs, to identify photographs that had been recovered in searches and so forth. The other issue on the vouching was Donyea Gray, who is this witness who initially testified before the grand jury and falsely implicated Greer and then came back later on at the urging of Special Agent French and admitted that that testimony was false, thereby exonerating Greer. I mean, I think that speaks volumes for Special Agent French, but the point here for our purposes is that the question itself that was posed to the agent was inartful at best. It was probably – Okay. You know what? Why don't we do this? This is an irregular way to proceed. You've got about a minute and a half left. Let's hear from Elandow, and then you might want to respond to that. That sounds great to me. Let's do it that way. Yeah. Well, Your Honor, this is truly going to be a rebuttal, so we'll see. Okay. We'll see. There's a couple of points I wanted to make on the Confrontation Clause issue. First, the – there's a second error that there's a – the Rule 703 has been amended. The presumption is that the information, that otherwise inadmissible evidence, that is used as the basis for an expert opinion, is not to be admitted in evidence. There's a presumption against that. And before it's admitted, the Court has to make a finding that is really the reverse of the 403-404 finding. The Court has to find that the probative value substantially outweighs the prejudicial impact. That did not happen here. And, in fact, I think that the street intelligence that was relayed to the jury and the admissions of the – Okay. What specifically are you – what particular statements by Detective Fowler are you saying should not have come in, so I can get a sense of how bad it was? Sure. What should not have come in was his conclusion that PDF was a gang. In fact, he testified – he was 100 percent certain that it was a gang, a street gang. But that's not hearsay. That's his conclusion as an expert. That's his opinion, but it was – that was what the jury – that actually encroached on what the jury should have been allowed to find. He was – he certainly could testify about the characteristics of street gangs, you know, and patterns and practices, although I certainly – I think it was all too convenient that his description of a street gang was exactly the same as PDF, that drug gangs didn't share profits and this and that. But that aside, he certainly could testify as to characteristics of street gangs, the meaning of graffiti, meaning of code words. I mean, this Court has upheld that. You know, you're drifting off from my question. I'm sorry. What I'm asking is, what did he say that he should not have said that had hearsay in it? Okay. To which you're objecting. So I want to get a sense of how harmful that might have been. Okay. Well, first of all, the admissions of the co-defendants who had pleaded guilty. And what did he say when he did that? He said that they had all admitted that they were members of PDF, which was either an organization or a group that engaged in gang-related activities. And those were co-defendants? Those were co-defendants who were not – who had pleaded guilty before trial. They had been indicted. The second set of information that we – that was hearsay was the statements that he relayed, that he talked to various – and this was in the beginning part of his testimony – that he talked to various people on the street. And they – and I believe – I can't quote it word for word, but I can grab my note. And – excuse me. Of course, you can never find exactly what you want when you have it. But the – what – he testified, essentially, that he dealt with people on the street and that they were prostitutes and drug dealers and this and that and the other. And that they told him that – that they – that what they told him was the basis for his opinion. And that in itself – he said he relied on street intelligence he'd already discussed to conclude that PDF was a street gang in West Vallejo. This is intelligence from people on the street, including victims. And then he talked about the fact that he saw graffiti, tattoos. Again, that would be, you know, legitimate. But he did talk about his experience in patrolling and the people that he talked to. And that – So let me just make sure I'm understanding you to this in as strong a form as I can understand your argument. You're objecting to his statement that the co-defendants had admitted that they were in a gang. Yes, definitely. Absolutely. Anything more? Well, his testimony – His conclusions? No, not his conclusions, but the testimony about the street intelligence that he relied on to reach the conclusions. He can offer his opinion, but in certain cases like this one, some of the underlying bases don't – they just don't – they're not supposed to come in. And that is the fundamental part of the error here. Okay. Okay? And now I have 20 seconds. Let me just move just and say a couple of things about the adoptive admissions. Clearly, the first two conversations shouldn't have come in. The foundation was inadequate. And we look at the foundation. If the foundation isn't there, the court isn't supposed to admit it. You know, it's not questionable. The jury doesn't get to decide. Was there a foundation objection made? Oh, yes, it was. Absolutely. And the court overruled the objections. The court overruled the objections and admitted all three conversations. Well, why isn't that a ruling on the foundational objection? And then the jury has to decide the rest. But it's still – well, the court made a ruling, and it's this Court's job to review that ruling. And what I'm saying is that that ruling was an abuse of discretion under Hinkson because it relied on clearly erroneous facts. But if the witness testifies that the distance between me and the defendant was the distance between you and me, which I think is about 15 feet in this courtroom, why isn't that sufficient to permit the jury then to resolve the question of whether or not I overheard what you said and should have reacted to it? It is the district judge's – this Court has said in earlier cases that to admit evidence that for the purpose of an adoptive admission, there has to be an adequate foundation that the defendant heard. And it's the government's burden by preponderance to make that foundation. And what I'm saying is that – But what more could the government show other than the distance between the speaker and the defendant at the time the statement was made and the circumstances when we were walking down the street? Well, they couldn't. And, in fact, that's why it should have been excluded. I will add – But that goes to the weight, not to its admissibility. That's where I'm having – you want us to rule as a matter of law that that objection should have been sustained. And I'm – what case do you have? Ordonez. U.S. v. Ordonez. It's cited in the brief. All right. Okay. All right. Thank you, Your Honor. Thank you. Mr. Lapham, you're okay? I'm okay. I hope you're okay. Okay. Thank you. The case of United States v. Walker and United States v. Greer is now submitted for decision. That's our last argued case. I'll say this because I know we have some law students here. After our conference, one or more of us are willing to come back out into the courtroom and to talk to you. I'm not exactly sure how long the conference will take, but one or more of us will be happy to come back out and talk. Okay. We're now adjourned. Thank you very much. All rise.
judges: Fernandez, Fletcher W. , Tallman